UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In Re:

    Gisoti Plumbing and Heating, Inc.          Chapter 11
                                         Case No. 24-10173
                         Debtor.

_____

## DEBTOR'S SMALL BUSINESS SUBCHAPTER V
## CHAPTER 11 PLAN DATED MAY 20, 2024

This Small Business Subchapter V Chapter 11 Plan of Reorganization (the "Plan") is presented to you to inform you of the proposed plan of Gisoti Plumbing and Heating, Inc., the Debtor and Debtor-in-Possession herein (hereinafter, the "Debtor") and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions appears within this document.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED AS SET FORTH IN THE ENCLOSED COURT ORDER.**

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN, IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE DEADLINE SET FORTH IN THE ENCLOSED COURT ORDER.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY THE DEADLINE SET FORTH IN THE ENCLOSED COURT ORDER. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**BOYLE LEGAL, LLC**
**Attn: Michael L. Boyle, Esq.**
**Attorney for Debtor**
**64 2ⁿᵈ Street**
**Troy, NY 12180**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

The Debtor hereby proposes the following Chapter 11 Plan of Reorganization:

## Article 1: Introduction

**A.**      **Description and History of the Debtor's Business**

The Debtor is a Corporation duly formed under the laws of the State of New York. The Debtor is operated and managed by its President and CEO, Mr. Greg Gisoti (hereinafter, "Mr. Gisoti"). The Debtor is commercial contractor of Plumbing and Heating, Ventilation, and Air Conditioning  ("HVAC") services with its principal place of business located at 396 Grange Road, Troy, NY 12180. The Debtor was formed on November 4, 2016, to provide commercial plumbing and HVAC services to the greater Capital Region of New York.

Upon formation, the Debtor initially saw significant financial success. Materials were easy to source. Projects and associated payments were progressing timely. The Company saw year over year growth up until the pandemic. Unfortunately, the COVID-19 pandemic decimated Debtor's business like so many others. As a commercial contractor, Debtor was a deemed an essential business under the guidelines provided by New York State. As such, it was mandated to continue to service its open contracts, notwithstanding the unavoidable realities of its industry during that time period, including, supply chain delays, cost overruns, and labor shortages all contributed to shrinking margins for the Debtor.

In an attempt to stabilize its business and generate adequate cash reserves to continue operations, the Debtor entered into a series of Merchant Cash Advance ("MCA") Agreements in 2023. These agreements, structured similar to "Pay Day" loans, promised cash upfront for future receivables of the Debtor. These MCAs resulted in over $30,000.00 withdrawn weekly from Debtor's bank accounts in contemplation of repayment under the various MCA agreements. This

2

repayment structure was unsustainable and jeopardized Debtor's long-term prospects of survival.

Pre-petition, Debtor took multiple steps to reduce overhead in order to maintain operations, including, trading in its vehicles for less expensive ones, reducing its full and part-time employees, and purchasing real estate to reduce rental expenses and build equity in its assets.

Given the relative size of Debtor's operations coupled with its limited resources, Debtor determined that Bankruptcy protection would most effectively allow it to consolidate its efforts to surrender superfluous equipment, maintain necessary equipment, and adjust its debt loads to a manageable level in order to continue operations.

Debtor filed for Chapter 11 Bankruptcy Protection on February 19, 2024, electing to proceed under Subchapter V. The Debtor continues to operate its business pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code with its principal place of business located at 296 Grange Road, Troy, NY 12180.

At the time of filing, Debtor's assets include its real property, worth an estimated $230,000.00, and chattel worth approximately $900,000.00, including, cash and cash equivalents in the approximate amount of $6,500.00; accounts receivable in the approximate amount of $550,000.00; vehicles in the approximate amount of $165,000.00; tools, equipment, and inventory in the approximate amount of $60,000.00.

At the time of filing, Debtor owed secured debts (without accounting for bifurcation) in the amount of approximately nine hundred and forty thousand dollars ($940,000.000) arising from various UCC filings by multiple creditors. At the time of filing, Debtor owed approximately one million eight hundred and forty thousand dollars ($1,840,000.00) in general unsecured debts.

The Debtor has reviewed the Debtor's books and records and has determined that it is

3

owed approximately $142,000.00 from the insider entity, My Ride Supply, LLC. My Ride Supply, LLC will fund the Debtor a partial repayment of the debt over the life of Debtor's plan of reorganization.

From a review of Debtor's financials there are no preference, fraudulent conveyance, or other avoidance actions to pursue other than the transfer to My Ride Supply, LLC.

## Goals of Reorganization

Debtor's goal in this reorganization is to: (a) maintain necessary equipment and repay the secured creditors associated with its necessary equipment the present value of said equipment, with interest, over the life of the plan of reorganization; (b) surrender unnecessary equipment back to secured creditors with liens against same; and (c) provide a reasonable dividend back to its general unsecured creditors.

**B.**      **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. Debtor's calculated "liquidation value" at the time of filing is $41,367.24. Please note several assumptions made by Debtor in calculating liquidation:

(a) Debtor assumes UCC filings do not attach to real property or titled vehicles under New York Law and that only mortgage/vehicle liens are properly recorded against same;

(b) **Debtor's calculations of Liquidation/Sale Costs account for** customary commissions (i.e. Real Estate/Auctioneer Commissions) and statutory commissions (i.e. a Hypothetical Chapter 7 Trustee). Debtor's calculations of Liquidation/Sale Costs **do not account for** hypothetical legal fees of a Chapter 7 Trustee.

(c) UCC Liens are credited based on date of perfection, as well as financing statement articulating what specific assets are subject to each lien.

Annexed hereto and made a part hereof as Exhibit "A" is a true and accurate copy of Debtor's liquidation value analysis.

**C.     Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business, and the Plan must provide projections that support the Debtor's ability to make all payments required by the Plan. *See* 11 U.S.C. §1190.

Creditors who are entitled to payment will be paid as an ongoing concern over the five-year plan term. The Plan shall be funded from ongoing revenues derived by the Debtor's ongoing business operations. Annexed hereto and made a part hereof as Exhibit "B" is Debtor's financial projections over the life of the plan.

The final Plan payment is expected to be paid 60-months from date of Confirmation.

*You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.*

## ARTICLE 2: SUMMARY

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative and Priority Tax Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether

5

each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest is impaired if the Plan alters the legal, equitable, or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided for in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims, that actually vote, vote in favor of the Plan. Additionally, a class of Equity Security Holders accept the Plan when at least two-thirds (2/3) in the amount of the allowed Equity Security Holders, that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

All Claims, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1     Classification of Claims: each of the following sections of Article II provides explanations of the different Claim classifications under the Plan. Administrative Expense Claims and Administrative Professional Fee Claims have not been classified and are excluded from the Classes set forth in Article 3.1 in accordance with Section 1123(a)(1) of the Bankruptcy Code.

2.2 Classes: The Plan Provides for:

| [ 3 ] | Classes of allowed secured claims; |
|---|---|
| [ 1 ] | Classes of bifurcated or wholly under secured claims to be treated as unsecured; |
| [ 1 ] | Classes of secured claims subject to surrender of collateral; |

| [ 1 ] | Class of critical vendor unsecured claims; |
|-------|--------------------------------------------|
| [ 1 ] | Class of non-priority unsecured claims; and |
| [ 1 ] | Class  of equity security holders. |

**Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive distributions of no less than 08%.

**Payment of administrative expenses and priority claims:** This Plan provides for full payment of administrative expenses and priority claims upon confirmation of the Plan, or to such other terms as stipulated by and between the Debtor and the respective administrative or priority Creditor.

All Creditors and Equity Security Holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.*

### ARTICLE 3: CLASSIFICATION OF CLAIMS AND INTERESTS AND TREATMENT UNDER THE PLAN

**3.01  (Unclassified Claims)**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may; however, object if, in their view, their treatment under the Plan does not comply with the requirements of the Bankruptcy Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is

disputed, the Bankruptcy Court must determine the validity and amount of the Administrative

Expense. Any Administrative Expense that is undisputed and is due and owing on the

Confirmation Date must be paid in accordance with this Plan, or upon such other term as agreed

upon by the Debtor and the Administrative Claimant or court order. If the Administrative

Expense is disputed, payment will be made after allowance of the Administrative Expense is

determined by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.   If the Debtor trades in the ordinary course of business following its filing of the

Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This

ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing

basis in accordance with the ordinary business practices and terms between the Debtor and its

trade Creditors.

2.   If the Debtor received goods it has purchased in the ordinary course of business

within 20 days before the Petition Date, the value of the goods received is an Administrative

Expense.

3.   Administrative Expenses also include any post-petition fees and expenses allowed to

professionals, including the allowed claim of the Subchapter V Trustee for fees and/or

reimbursements, and for Attorneys and Financial Professionals employed upon Bankruptcy Court

authority to render services to the Debtor during the course of the Chapter 11 case. These fees

and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to

payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their

proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $20,000.00 | Payment through the Plan as follows: to be paid as an ongoing concern by and between Debtor and its trade Creditors. |
| Administrative Tax Claims | $48,105.74 | Payment through the Plan as follows: to be paid in full as an ongoing concern through regular tax and accounting practices. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Payment through the Plan as follows: N/A |
| Professional Fees, as approved by the Bankruptcy Court | $30,000.00 (est.) | After Bankruptcy Court approval, payment as agreed upon by and between Debtor and Professionals |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date: N/A |
| Other Administrative Expenses | $0.00 | Payment through the Plan as follows: N/A |
| Trustee | $15,000.00 (est.) | After Bankruptcy Court approval, payment in full upon the effective date of the Plan. |

ESTIMATED TOTAL:                    $113,105.74

B. Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by Section 507(a)(8) of the Code. Unless the holder of such a Section 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from Confirmation of the Plan.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $00.00 | If owed and allowed, will be paid upon Confirmation and paid in equal monthly installments over the life of the plan. |
| New York State | $15.08 | If allowed, will be paid upon the Effective Date of the Plan in full. |

**3.02  (Secured):**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent allowed as secured Claims under Section 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

**Class 1**. Secured Claims of Saratoga National Bank

Class 1 secured claims shall be treated as fully secured and shall be paid as provided below. Debtor shall retain Class 1 collateral.

The following chart lists all Class 1 Secured Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impaired? | Treatment |
|---|---|---|---|---|
| 1 | Saratoga National Bank | No. | Yes. | Debtor shall retain the collateral of Saratoga National Bank and remit monthly payments pursuant to the various contracts by and between Debtor and SNB. |

| | | | | Any arrears owed to SNB (est. $4,631.14) on its secured claims shall be paid in full in equal monthly installments.

Post-Confirmation, Debtor reserves its right to sell (with consent of SNB) or surrender superfluous collateral of SNB to SNB. In a surrender scenario, SNB would be entitled to liquidate said collateral and file a general unsecured deficiency claim within 60-days of surrender or 30-days of sale, whichever occurs first.

Should SNB fail to file a deficiency claim within 60-days of surrender or 30-days of sale, whichever occurs first, SNB shall not receive a general unsecured distribution under this plan and are estopped from seeking further contribution from the Debtor for said deficiency amounts. |
|---|---|---|---|---|

Estimated Monthly Payment to Class 1 Creditor: $6171.06 /mo. for ongoing payments; $77.19/mo. for arrearage payments. Total Class 1 Payments: $6248.25/month.

**Class 2**. Secured Claims of Western Equipment Finance

Class 2 secured claims shall be treated as fully secured and shall be paid as provided

below. Debtor shall retain Class 2 collateral.

| Class # | Description | Insider? | Impaired? | Treatment |
|---------|-------------|----------|-----------|-----------|
| 2 | Western Equipment Finance (Aeroseal System) | No. | Yes. | At the time of filing, upon information and belief, WEF is owed $21,593.90 on its secured claim associated with Debtor's Aeroseal System.<br><br>Debtor values its Aeroseal System at $15,000.00 based on readily available comparables available at or near the date of filing.<br><br>Debtor shall pay WEF $15,000.00 at 9% interest over 60-months ($311.38/mo).<br><br>The residual of WEF's claim (6,593.90) shall be treated as wholly unsecured and shall receive distribution in line with Class 7 general unsecured creditors. |
| 2 | Western Equipment Finance (Mini Excavator) | No. | Yes. | At the time of filing, upon information and belief, WEF is owed $16,878.58 on its secured claim associated with Debtor's Mini Excavator.<br><br>Debtor shall pay WEF |

| | | | | $16,878.58 at 9% interest over 60-months (350.38/mo) |
| | | | | |

Estimated Monthly Payment to Class 2 Creditor: $661.76/mo.

**Class 3**. Secured Claim of the Small Business Administration.

Class 3 secured claims shall be treated as fully secured with the value of its security

interest in Debtor's property paid, with interest, as provided below.

| Class # | Description | Insider? | Impaired? | Treatment |
|---------|-------------|----------|-----------|-----------|
| 3 | Small Business Administration | No. | No. | The SBA has a first position UCC claim in the amount of $531,420.82.<br><br>Post-Confirmation, SBA's claim shall be treated as fully secured and paid as a long-term debt at contractual interest $3.75%), pursuant to the Contract by and Between Debtor and SBA at $2,431/mo. |

Estimated Monthly Payment to Class 3 Creditor: $2431.00/mo.

**Class 4**. MCA Creditors.

Class 4 claims shall be treated as wholly unsecured and shall receive a general unsecured

distribution in line with Class 7 creditors, discussed *infra*.

| Class # | Description | Insider? | Impaired? | Treatment |
|---|---|---|---|---|
| 4 | CFG Merchant Solutions, LLC | No. | Yes. | If allowed, shall be paid in accordance with Class 7 general unsecured creditors |
| 4 | MEG Funding, LLC | No. | Yes. | If allowed, shall be paid in accordance with Class 7 general unsecured creditors |
| 4 | Parkview Advance LLC | No. | Yes | If allowed, shall be paid in accordance with Class 7 general unsecured creditors |

Estimated Monthly Payment to Class 4 Creditors: $NA/mo. *See* Class 6, General Unsecured Creditors.

**Class 5.** Secured Creditors Subject to Debtor's Surrender of Collateral. Class 5 Secured Creditors shall receive their collateral from the Debtor upon mutually agreeable surrender terms. Secured Creditors shall have 60-days from the date of Surrender or the date from the Entry of the Order Confirming the plan, whichever is sooner, to liquidate their Collateral and provide Debtor notice of any deficiency, or surplus, from the sale. Notice of deficiency shall be deemed given only if the deficiency Creditors files a Proof of Claim with the Court within the timelines described herein. Any surplus proceeds shall be paid over to the Debtor and utilized to fund ongoing business operations. Any deficiency shall be paid as a general unsecured claim in line with Class 3 Creditors under the Plan. Should Class 2 Creditors fail to provide Debtor with a deficiency claim within 60-days of surrender or 60-days from the Entry of the Order Confirming the Plan, Class 2 Creditors shall receive no additional compensation under the plan, other than

14

any revenues realized from the sale of surrendered collateral.

| Class # | Description | Insider? | Impaired? | Treatment |
|---------|-------------|----------|-----------|-----------|
| 5 | N/A | No. | Yes. | |
| 5 | N/A | No. | Yes. | |
| 5 | N/A | No. | Yes. | |

Estimated Monthly Payment to Class 2 Creditors: $N/A/mo. Upon information and belief, Debtor has no general unsecured creditors

**3.03 (Unsecured Claims):**

**Class 6.** Unsecured Critical Vendors. Unsecured Critical Vendors are not secured by property of the bankruptcy estate. Unsecured Critical Vendors shall be paid in full over the life of Debtor's plan, or longer if agreed to by and between Debtor and it's Critical Vendors. Critical Vendors shall receive said treatment based on their continued willingness to provide Debtor with critical services and/or supplies post-petition not withstanding Debtor's pre-petition defaults to same.

| Class # | Description | Insider? | Impaired? | Treatment |
|---------|-------------|----------|-----------|-----------|
| 6 | VP Supply Co. | No. | Yes. | At the time of filing, VP Supply Co. was owed approximately $363,000.00 by Debtor.<br><br>VP Supply shall be treated as a long-term debt and be repaid $350,000.00 over a period of 5-years |

15

| | | | | |
|---|---|---|---|---|
| | | | | ($5,833.33/mo.)<br><br>In contemplation of said treatment, VP Supply Co. agrees to continue to supply Debtor on mutually agreed upon trade terms. |
| 6 | Goldenthal & Suss Consulting, P.C. | No. | Yes. | At the time of filing, GS was owed approximately $5,000.00 by the Debtor.<br><br>GS shall be paid in full over the first 24-months of Debtor's 60-month plan (approx. $208.33/mo). |

Estimated Monthly Payment to Class 6 Creditors: $6041.66/mo. for mos. 1-24; $5,833.33/mo. thereafter.

**Class 7**.  General Unsecured Claims are not secured by property of the estate and are not entitled to priority under Section 507(a) of the Bankruptcy Code.

Any Creditor otherwise not specifically accounted for under this Plan shall be treated as a General Unsecured Class 7 Claim.

General Unsecured Claims shall receive their *pro rata* share of $150,000.00, with a minimum distribution of 8% of their claim.

General Unsecured Claims are Impaired pursuant to §1124 of the Bankruptcy Code.

| Class # | Description | Insider? | Impaired? | Treatment |
|---|---|---|---|---|
| 7 | **All General Unseucred Creditors** | **No.** | **Yes.** | If allowed, shall receive their *pro rata* share of $150,000.00 with a distribution of no less than 8%. |

Estimated Monthly Payment to Class 7 Creditors (paid *pro rata*): $2500.00/mo.

**3.04   (Lease Claims):**

**Class 8**. Class 8 Claimants are not secured by property of the estate and are not entitled to

priority under Section 507(a) of the Bankruptcy Code.

| Class # | Description | Insider? | Impaired? | Treatment |
|---------|-------------|----------|-----------|-----------|
| 8 | De Lage Landen Financial Services Inc. | No. | No. | Debtor shall surrender Class 8 Creditor's Collateral in full satisfaction of the lease claim. |

Estimated Monthly Payment to Class 4 Creditors (paid *pro rata*): $NA.00/mo.

**3.05 (Equity Security Holders):**

**Class 9.**  Equity Interest holders are parties who hold an ownership interest in the

Debtor. In a Corporation, the Equity Interest holders are its shareholders.

Class 9 Equity Shareholders shall make additional contributions, as necessary, to

further fund the Debtor's operations.

Class 9 Equity Shareholders hold pre-petition claims against the Debtor in the

estimated amount of $148,362.67 ($68,395.29 owed to Mr. Gisoti; $79,967.38 owed to

Motostar, Inc. In contemplation of maintaining full ownership interest in the Debtor,

Equity Shareholders have agreed to waive any claims owed by Debtor to Mr. Gisoti or

Motostar.

Class 9 Equity Shareholders shall fund a minimum of $60,000.00 into the plan

above and beyond capital contributions in contemplation of the fraudulent conveyances

by and between Debtor and My Ride Supply, LLC.

The following chart sets forth the Plan's proposed treatment of the class of Equity

Interest holders:

| Class # | Description | Impaired? | Treatment |
|---------|-------------|-----------|-----------|
| 9 | Equity Security Holder of Debtor – Greg Gisoti (100% owner) | Unimpaired | Equity Interest holders shall retain 100% of the shareholder interests in the reorganized Debtor.<br><br>In contemplation of same, Mr. Gisoti shall waive any known or unknown claims against Debtor held by himself, personally, or his wholly owned separate entities.<br><br>Class 9 Equity Security Holders shall repay to Debtor no less than $60,000.00 over the life of the Plan. |

**ARTICLE 4: TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS**

**4.01    : Administrative expenses.** Administrative expenses allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claims and the Debtor;

**4.02    Priority tax claims.** Each holder of an allowed priority tax claim will be paid in full in equal monthly installments not to exceed 60-months from the date of the Confirmation of the Plan.

**4.03    Statutory fees.** All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan will be paid on or before the effective date. Debtor does not anticipate incurring any statutory fees.

**ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**5.01 : Estimated Number and Number of Claims Objections**

The Debtor may object to the amount or validity of any Claim within 60- days of the

Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the

objection on the holder of the Claim. The Claim objected to will be treated as a Disputed

Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the

Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

**At this time Debtor does not anticipate any Claims objections but reserves its right to**

**object to such Claims as necessary.**

**5.02 : Treatment of Executory Contracts and Unexpired Leases**

Executory Contracts are contracts where significant performance of the contract remains

for both the Debtor and another party to the contract. The Debtor has the right to reject, assume

(i.e. accept), or assume and assign these types of contracts to another party, subject to the

Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its

Executory Contracts (which includes its unexpired leases) and the impact such intentions would

have on the other parties to the contracts.

Debtor holds one Unexpired Lease with Adirondack Trust Company associated with its

principal place of business. Debtor Assumes the Lease with Adirondack Trust Company and will

continue to make ongoing monthly payments pursuant to the Contractual Terms of the Lease

Agreement.

**5.03  : Disputed claim.**  A *disputed claim* is a claim that has not been allowed or

disallowed and as to which either:

(i)  A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has

filed an objection; or

(ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.04 : Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.05 : Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

ARTICLE 6: MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan will be implemented by the Debtor remitting payment to creditors as provided for herein from the Debtor's cash flow as well as ongoing capital contributions (as necessary) from the Debtor's membership. Additionally, Debtor will receive an additional $60,000.00 in funding from My Ride Supply, LLC, or Mr. Gisoti on behalf of My Ride Supply, LLC, over the life of the plan

Upon Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will revert free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The director and officer of the Debtor, Mr. Gisoti, immediately prior to the Effective Date shall serve as the initial director and officer of the Reorganized Debtor on and after the Effective Date. Mr. Gisoti shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended

from time to time.

**6.01   : Payments.**

Confirmation of the Plan is sought as a consensual plan under §1191(a).

Accordingly, except as otherwise provided in the Plan or in the order confirming the Plan, the Debtor-in-Possession shall make the Plan payments to creditors under the Plan. In the event that confirmation is not consensual under §1191(a), Debtor will seek to confirm the Plan as a non-consensual Plan under§1191(b), in which case the Plan payments to creditors under the Plan will be made by the Trustee, unless the confirmation Order deems otherwise. Debtor reserves its right to request that Plan payments be made by the Debtor. In the event that confirmation is nonconsensual, and the Trustee will make the payments, the Debtor will remit to the trustee the amounts necessary to make the plan payments, and the trustee will make the plan payments to the extent of the funds so provided.

**6.02   : Post-Confirmation Management**

The Post-Confirmation Officers/Managers of the Debtor shall be: Mr. Gisoti, President and CEO.

**6.03   : Tax Consequences of the Plan**

Creditors and Equity Interest Holders Concerned with how the Plan may affect their Tax Liabilities should consult with their own accountants, attorneys, and advisors.

**ARTICLE 7: GENERAL PROVISIONS**

**7.01   : Definitions and rules of construction.**  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan

**7.02   : Effective date.**  The effective date of this Plan is the day that is 30-days

after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**7.03    : Binding effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**7.04    : Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**7.05    : Corporate governance.** Pursuant to Section 1123(a)(6) Debtor shall not issue nonvoting equity securities, and Mr. Gisoti, as sole owner of the Debtor, shall maintain all rights as sole-owner.

**7.06    : Retention of Jurisdiction.** The court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

**7.07    : Title to Assets**. Property of the estate includes, in addition to the property specified in §541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, the Plan, or the order confirming the

Plan, the Debtor shall remain in possession of all property of the estate.

**7.08**   **: Severability.** If any provision of this Plan is determined to be

unenforceable the determination will in no way limit or affect the enforceability and

operative effect of any other provision of this Plan.

**7.09**   **: Retention of Jurisdiction by the Bankruptcy Court**. The Bankruptcy

Court shall retain jurisdiction of this case with regard to the following matters:

(i)   to make such orders as are necessary or appropriate to implement the provisions of

this Plan and to resolve any disputes arising from implementation of the Plan;

(ii) to rule on any modification of the Plan proposed under section 1193;

(iii)   to hear and allow all applications for compensation to professionals and other

Administrative Expenses;

(iv)   to resolve all issues regarding Claims objections, and issues arising from the

assumption/rejection of executor contracts or unexpired leases, and

(v)   to adjudicate any cause of action which may exist in favor of the Debtor,

including preference and fraudulent transfer causes of action.

**7.10**   **: Captions.** The headings contained in this Plan are for convenience of

reference only and do not affect the meaning or interpretation of this Plan.

**7.11**   **: Modification.** The Debtor may modify the Plan at any time before

confirmation of the Plan pursuant to §1193(a).

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the

Plan at any time after confirmation only if (1) the Plan has not been substantially

consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice

and a hearing.

If the Plan is confirmed under section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court and (2) the Bankruptcy Court authorized the proposed modifications after notice and a hearing.

**7.12**    **: Final Decree:** Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

ARTICLE **8:** DISCHARGE

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)        imposed by this Plan; or

(ii)       to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt on which the last payment is due after the first 5-years of the plan, or as otherwise provided in § 1192;

**8.1**    **: <u>Confirmation Injunction</u>**: Effective on the Effective Date, all persons or entities who have held, hold or may hold Administrative Claims or Claims against the Debtor are

24

enjoined from taking any actions against or affecting the Debtor or Bankruptcy Estate Property

with respect to such Claims or Administrative Claims, except as otherwise set forth in the Plan

and other than actions brought to enforce any rights or obligations under the Plan or appeals, if

any, from the Confirmation Order or other pending appeals of orders of the Bankruptcy Court.

ARTICLE 9: EVENTS OF DEFAULT

**9.1**    : An event or default shall occur if the Debtor or Disbursing Agent shall fail to

make any payment when due or shall fail to comply with any other material terms of this Plan,

and written notice of same has been provided to the Debtor and Disbursing Agent and the

Bankruptcy Court.

**9.2**    : Following an event of default, if such default has not been cured within fifteen

(15) days thereafter, any holder of a Claim, payment of which is in default, shall have the

right to seek relief from the Bankruptcy Court to compel payment or convert or dismiss the

case.

**Article 10: NON-STANDARD PLAN PROVISIONS**

**10.1**    : None.

**Article 11: DEFINITIONS**

The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy

Code shall apply when terms defined or construed in the Code are used in this Plan. The

definitions that follow that are found in the Code are for convenience of reference only, and are

superseded by the definitions found in the Code.

11.1    Administrative Expense Claim means a Claims for any cost or

expense of administration of the Chapter 11 Case under §503(b) or §330(a) and referred to in

section 507(a)(2) of the Code, which may include Claims Allowed pursuant to §506(c) of the

Bankruptcy Code, including any actual and necessary costs and expenses of preserving the

Debtors' estates, any actual and necessary costs and expenses of operating the business of the

Debtor, indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11

case in connection with the conduct of the business, all compensation or reimbursement of

expenses under sections 330, 331 or 503(b) of the Code to the extent incurred prior to the

Effective Date, and any fees or charges assessed against the estate of the Debtors under

Section 1930, Chapter 123 of title 28, United States Code.

11.2    Administrative Professional Fee Claim shall mean any Administrative Claim of a

Professional subject to allowance under §330 of the Bankruptcy Code or an order of the

Bankruptcy Court.

11.3    Allowed shall mean that portion of a Claim that, (i) has been timely

filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has

been listed by the Debtor in the Schedules a sbeing neither contingent, unliquidated nor disputed;

or (iii) has been allowed by a Final Order of the Bankruptcy Court.

11.4    Ballot shall mean the form transmitted with the Plan to those entitled to vote on the

Plan, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018

and §1126 of the Bankruptcy Code.

11.5    Bankruptcy Code shall mean title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

in effect for this case.

11.6    Bankruptcy Court means the United States District Court for the Northern District of New

York having jurisdiction over this Chapter 11 Case, and to the extent of any reference made

pursuant to section 157 of title 28, United States Code, the United States Bankruptcy Court and

any other court having jurisdiction over the Chapter 11 Case.

11.7   Business Day means any day other than a Saturday, a Sunday or any other day on which

banking institutions in New York are required or authorized to close by law or executive order.

11.8   Case means this Chapter 11 proceeding of Gisoti Plumbing and Heating, Inc. bearing case

number 24-10173 pending before the United States Bankruptcy Court for the Northern District of

New York.

11.9   Cash shall mean legal tender of the United States of America or cash equivalents.

11.10 Claim means any right to (a) payment from the Debtors, whether or not such right is

reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal equitable, secured, or unsecured or (b) an equitable remedy for breach of

performance if such breach gives rise to a right of payment from Debtors, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

disputed, undisputed, legal equitable, secured, or unsecured.

11.11 Class means the class to which an Allowed Claim is classified pursuant to Article

III of the Plan.

11.12 Closing shall mean the date upon which the Sale is consummated.

11.13 Code means Title 11, United States Code, as amended from time to time.

11.14 Confirmation Date means the date on which the Clerk of the Bankruptcy Court

enters the Confirmation Order on the docket of the Bankruptcy Court.

11.15 Confirmation Order means the order of the Bankruptcy Court confirming the Plan

in accordance with the provisions of §1129 of the Bankruptcy Code.

11.16 Debtor means Gisoti Plumbing and Heating, Inc.

11.17 Debtor in Possession means the Debtor, as Debtor-in-possession, in the Chapter

11 Case.

11.18    Disputed Claim means any claim against the Debtor pursuant to Section 502

of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

11.19    Effective Date means the date the Chapter 11 plan of reorganization will be in

effect. The Effective Date of this Plan is thirty (30) days following the date of the entry of the

Confirmation Date unless the plan or confirmation order provides otherwise.

11.20    Equity Interest means any share of preferred (voting) or common stock or

other instruments evidencing a present ownership interest in the Debtors.

11.21    Filing Date means February 19, 2024, the date on which the Debtor filed its

petition for relief commencing the Chapter 11 Case.

11.22    Final Order means an order of the Bankruptcy Court which shall not have

been reversed, stayed, modified, or amended and in which the time to appeal or to seek a

review or other hearing has expired and which is otherwise final in all respects.

11.23    Impaired Class shall mean those Claims which are deemed impaired pursuant

to section 1124 of the Code.

11.24    Insider shall have the meaning ascribed to it in §101(31)(B) of the Bankruptcy

Code.

11.25    Net Sale Proceeds shall mean the monies from the sale of the Debtor's assets

after all costs and expenses related to the sale and Carve Outs are deducted.

11.26    Non-Tax Priority Claim shall mean any Claim against the Debtor to the extent

entitled to priority in payment under §507(a)(4)-(6) of the Bankruptcy Code.

10.16    Petition Date shall mean the Date upon which the Petition was filed with the

Court.

10.17    Plan means this chapter 11 plan of reorganization, either in its present form or

as it may be altered, amended or modified from time to time in accordance with the provisions of the Code, the Bankruptcy Rules and the terms hereof.

10.18   Plan Distribution Date shall mean the date upon which there are sufficient monies in the Plan Distribution Fund to make the Plan payments to creditors under the Plan, which shall be as soon as practicable after the deadline for Governmental entities to file Proofs of Claim has passed.

10.19   Plan Distribution Fund shall mean the aggregate of the Debtor's Cash on hand.

10.20   Priority Claim shall mean any Claim against the Debtors accorded priority in right of payment under §507(a) of the Code, other than an Administrative Expense Claim.

10.21   Priority Tax Claim shall mean a Claim against the Debtor to the extent entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

10.22   Professionals shall mean those persons or entities: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code entitled to compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to § 503(b)(2) and (4) of the Bankruptcy Code.

10.23   Property shall mean the Debtor's property, which shall be sold to the Purchaser pursuant to a sale Contract and this Plan.

10.24   Pro Rata shall mean proportionally according to the total amount of Allowed Claims in a particular class.

10.25   Purchaser shall mean the entity that will Purchase Debtor's assets.

10.26    Sale shall mean the sale of the Property to the Purchaser.

10.27    Sale Order shall mean an Order of the Court authorizing the Sale of Debtor's

Property.

10.28    Secured Claim means a Claim against the Debtors held by any person or

entity, including a judgment creditor of the Debtors, to the extent of the value, as determined

either by the Bankruptcy Court pursuant to section 506(a) of the Code or as otherwise

provided in the Plan, of any interest in property of the estate securing such Claim.

10.29    Schedules shall mean the schedules of assets and liabilities and the statement

of financial affairs filed by the Debtor as required by §521 of the Bankruptcy Code and

Bankruptcy Rule 1007, and all amendments thereto.

10.30    Unimpaired shall mean, with respect to any Class, that such Class is not

Impaired.

10.31    Unsecured Claim means any Claim that is not a Secured Claim,

Administrative Expense Claim or Priority Claim.


Respectfully submitted,


/s/Gregory Gisoti
Gregory Gisoti, President and CEO
Gisoti Plumbing and Heating, Inc.



/s/Michael L. Boyle

Michael L. Boyle
Boyle Legal, LLC *Attorneys for Debtor*
64 2nd  Street
Troy NY 12180
518-407-3121
mike@boylebankruptcy.com